## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL NACCI, | : | |
| Plaintiff | : | CIVIL ACTION |
| v. | : | |
| BUCKS COUNTY | : | |
| AND | : | |
| PRIMECARE MEDICAL, INC. | : | JURY TRIAL DEMANDED |
| AND | : | |
| WARDEN CARL METELLUS | : | |
| AND | : | |
| JOHN/JANE DOE BUCKS COUNTY | : | |
| CORRECTIONAL OFFICERS (NOS. 1-N) | : | |
| AND | : | |
| JOHN/JANE DOE BUCKS COUNTY | : | |
| SHERIFF OFFICERS (NOS. 1-N) | : | |
| AND | : | |
| THOMAS WEBER PRIMECARE MEDICAL | : | No. |
| CEO | : | |
| AND | : | |
| DR. PAMELA ROLLINGS-MAZZA | : | |
| AND | : | |
| CHRISTOPHER NORFLEET | : | |
| AND | : | |
| DR. VICTORIA GESSNER | : | |
| AND | : | |
| BRIANNA CULP, P.A.-C | : | |
| AND | : | |
| MEGAN HUGHES, P.A.-C | : | |
| AND | : | |
| LEE ANN REYNOLDS, LPN | : | |
| AND | : | |
| JAVIER VAZQUEZ, CRNP | : | |
| AND | : | |
| JESSICA THOMAS, RN DON | : | |
| AND | : | |
| KATIE THOMAS, CRNP | : | |
| AND | : | |
| REUBEN STOLTZFUS, RN | : | |
| AND | : | |
| JOHN OLVIER | : | |
| AND | : | |
| CASEY DONOHUE, RN | : | |
| | : | |
| Defendants | : | |

## PLAINTIFF'S COMPLAINT

## I.   INTRODUCTION

1.   Plaintiff, a wheelchair bound quadriplegic, brings the action for damages pursuant to 42 U.S.C. § 1983, the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment of the United States Constitution, as well as the statutory and common laws of the Commonwealth of Pennsylvania, stemming from his incarceration at the Bucks County Correctional Facility (BCCF) during which time Defendants failed to take and/or implement reasonable and standard medical protocols to address Plaintiff's serious medical needs. As a proximate result of Defendants' failure to provide Plaintiff with the reasonable and necessary mattress and required care to prevent bedsores, Plaintiff developed a large bedsore on his sacrum despite warning prison and medical staff upon Intake that the condition was imminent. As a further result, Plaintiff required multiple debridement procedures, two surgeries, and developed sepsis.

## II.   JURISDICTION AND VENUE

2.   The court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §§1331 and 1343 and jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367 and the principles of pendant and ancillary jurisdiction.

3.   Venue is proper under 28 U.S.C. §1391(b) because the cause of action upon which the Complaint is based arose in Bucks County, Pennsylvania, which is in the Eastern District of Pennsylvania.

**III.   PARTIES**

4.   Plaintiff Michael Nacci, is an adult citizen and resident of the Commonwealth of Pennsylvania, residing as captioned.

5.   Defendant, Bucks County, is an entity or political subdivision organized and existing under the laws of the Commonwealth of Pennsylvania, which at all relevant times owned, operated, managed, and maintained the Bucks County Correctional Facility (BCCF) and had a constitutional duty to ensure the safety and wellbeing of all persons incarcerated/housed in the Prison, including the Plaintiff.

6.   In an effort to comply with its constitutional duty to ensure the safety and wellbeing of all persons incarcerated/housed in the Prison, Defendant Bucks County contracted with Defendant PrimeCare Medical, Inc. to provide constitutionally adequate medical care and treatment to the persons incarcerated/housed at the Bucks County Correctional Facility, including the Plaintiff.

7.   At all relevant times, Defendant Bucks County acted or failed to act through its employees, correctional officers and staff, agents, servants, and/or contractors, including Defendant PrimeCare Medical, Inc. and individual PrimeCare Defendants, then and there acting in the course and scope of their employment, agency, servanthood, and/or contract.

8.   Defendant Bucks County contract with Defendant PrimeCare to provide adequate medical care and treatment did not relieve the County of its constitutional duty to ensure the safety and wellbeing of those

individuals in its custody, including the Plaintiff through its policies, practices, and primary care protocols.

9. Defendant, PrimeCare Medical, Inc., (hereinafter referred to as "PrimeCare") is a business entity organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business located in Harrisburg, Pennsylvania.

10. At all relevant times, Defendant PrimeCare acted or failed to act through its employees, agents, servants, and/or contractors, then and there acting in the course and scope of their employment, agency, servanthood, and/or contract.

11. At all relevant times, Defendant PrimeCare was performing a traditional governmental function under the color of state law and were therefore state actors.

12. At all relevant times, Defendants Bucks County and PrimeCare were responsible for testing, hiring, training, supervising, and disciplining individual employees and properly staffing the BCCF in order to provide adequate and necessary medical care to inmates, including Plaintiff, housed in Bucks County prisons, including the BCCF.

13. At all relevant times, Defendant Warden Carl Metellus is an adult individual and resident of the Commonwealth of Pennsylvania, who, at all relevant times, was employed by Defendant Bucks County, was acting under color of state law, oversaw the overall operations of the BCCF, and had final decision-making authority at over all policies, practices, and procedures concerning the care and safety of all prison inmates, including

Plaintiff. Warden Metellus is sued in both his individual and official capacities.

14. Defendant John/Jane Doe Correctional Officers (Nos. 1-N) are adult individuals employed by Defendant Bucks County and assigned to work in the BCCF. At all times herein, these Defendants were acting under color of state law and working in the course and scope of their employment. They are sued in their individual and official capacities.

15. Defendant John/Jane Roe Sheriff Officers (Nos. 1-N) are adult individuals employed by Defendant Bucks County, who work in the Bucks County Sheriff's Office, and assigned to transport prisoners from the BCCF to destinations off prison grounds such as hospitals. At all times herein, these John/Jane Roe Defendants were acting under color of state law and in the course and scope of their employment. They are sued in their individual and official capacities.

16. Defendant, CEO Thomas Weber, Esquire, is an adult individual and resident of the Commonwealth of Pennsylvania, who, at all relevant times, was employed by Defendant PrimeCare Medical Inc. Defendant Weber had decision-making authority over the degree and extent medical services were made available to inmates housed at the BCCF, including but not limited to Plaintiff. At all times, Defendant Weber was acting under color of state law and had final decision-making authority at PrimeCare over all policies and issues relevant to the instant complaint. Defendant, CEO Thomas Weber is sued in his individual and official capacities.

17. At all times herein, Dr. Victoria Rollings-Mazza is an adult individual employed by Defendant PrimeCare as the Chief Medical Officer in charge of Operations who had decision-making authority over the medical services provided to inmates, including Plaintiff, housed in the BCCF. At all times, Defendant Dr. Rollings-Mazza was acting under color of state law. She is sued in her individual and official capacities.

18. At all times herein, Christopher Northfleet is an adult individual employed by Defendant PrimeCare as the Healthcare Administrator who had decision-making authority over the degree and extent of medical services provided to inmates, including Plaintiff, at the BCCF. At all times, Defendant Norfleet was acting under color of state law. He is sued in both his individual and official capacities.

19. At all times herein, Defendant Dr. Victoria Gessner., is an adult individual and a board-certified licensed physician under the laws of the Commonwealth of Pennsylvania, an employee of Defendant PrimeCare who is assigned to the BCCF to oversee the medical care of its inmates, including Plaintiff Michael Nacci upon his Intake at the Prison. At all times, Dr. Gessner is a decision-maker concerning the level and extent of medical care services provided by Defendants to Plaintiff at the BCCF. At all times, Dr. Gessner was acting under color of state law. She is sued in her individual and official capacities.

20. At all times relevant hereto, Briana Culp, P.A.-C, is employed as the Regional Manager of Clinical Operations for Defendant PrimeCare and a licensed physician assistant-certified under the laws of the

Commonwealth of Pennsylvania. Defendant Culp is assigned to manage and provide reasonable and appropriate medical care to inmates, including Plaintiff Michael Nacci, housed in the BCCF.  At all times, Defendant Culp was acting under color of state law. She is sued in her individual and official capacities.

21. At all times relevant hereto, Defendant Megan Hughes, P.A.-C, is a licensed physician assistant-certified under the laws of the Commonwealth of Pennsylvania, an employee of Defendant PrimeCare, and is assigned to provide reasonable and appropriate medical care to inmates, including Plaintiff Michael Nacci, housed in the BCCF. At all times, Defendant Hughes was acting under color of state law. She is sued in her individual and official capacities.

22. At all times relevant hereto, Lee Ann Reynolds is a licensed practical nurse under the laws of the Commonwealth of Pennsylvania, an employee of Defendant PrimeCare, and is assigned to provide reasonable and appropriate medical care to inmates, including Plaintiff Michael Nacci, housed in the BCCF. At all times, Defendant Longacre was acting under color of state law. She is sued in her individual and official capacities.

23. At all times relevant hereto, Defendant Javier Vazquez, CRNP, is a certified nurse practitioner under the laws of the Commonwealth of Pennsylvania, an employee of Defendant PrimeCare, and is assigned to provide reasonable and appropriate medical care to inmates, including Plaintiff Michael Nacci, housed in the BCCF. At all times, Defendant

Vazquez was acting under color of state law and is sued in his individual and official capacities.

24.    At all relevant times hereto, Defendant Jessica Thomas, RN DON, is a registered nurse licensed under the laws and regulations of the Commonwealth of Pennsylvania and is Director of Nursing at the BCCF. At all times, Defendant Thomas is an employee of Defendant PrimeCare and is assigned to provide reasonable and appropriate medical care to inmates, including Plaintiff Michael Nacci, housed in the BCCF. At all times, Defendant Thomas was acting under color of state law. She is sued in her individual and official capacities.

25.    At all relevant times hereto, Defendant Katie Harvey, CRNP, is a certified registered nurse practitioner licensed under the laws and regulations of the Commonwealth of Pennsylvania. At all times, Defendant Harvey is an employee of Defendant PrimeCare and is assigned to provide reasonable and appropriate medical care to inmates, including Plaintiff Michael Nacci, housed in the BCCF. At all times, Defendant Harvey was acting under color of state law. She is sued in her individual and official capacities.

26.    At all times herein, Defendant Reuben Stoltzfus, RN, is a registered nurse licensed under the laws and regulations of the Commonwealth of Pennsylvania. Defendant Stoltzfus is an employee of Defendant Prime Care and was assigned to provide reasonable and appropriate medical care to inmates, including Plaintiff Michael Nacci, housed in the BCCF.

At all times, Defendant Stoltzfus was acting under color of state law and is sued in his individual and official capacities.

27.    At all times herein, Defendant John Oliver, RN, is a registered nurse licensed under the laws and regulations of the Commonwealth of Pennsylvania. Defendant Oliver is an employee of Defendant Prime Care and was assigned to provide reasonable and appropriate medical care to inmates, including Plaintiff Michael Nacci, housed in the BCCF. At all times, Defendant Oliver was acting under color of state law and is sued in his individual and official capacities.

28.    At all times herein, Defendant Casey Donohue, RN, is a registered nurse licensed under the laws and regulations of the Commonwealth of Pennsylvania. Defendant Donohue is an employee of Defendant Prime Care and was assigned to provide reasonable and appropriate medical care to inmates housed in the BCCF. At all times, Defendant Donohue was acting under color of state law and is sued in her/his individual and official capacities.

## IV.    OPERATIVE FACTS

29.    At all times herein, Defendants Bucks County and PrimeCare received federal funding to provide medical services to inmates, including Plaintiff, housed in the BCCF.

30.    At all relevant times, Plaintiff is a quadriplegic who uses a wheelchair with a Varilite Air specialty seat cushion to prevent bedsores while in his wheelchair and specialty bed mattress in order to prevent him from

developing bedsores from sleeping. As a quadriplegic, had no control over the movement of his legs and very limited use of his arms.

31. As a result of his quadriplegia and the lack of a proper egg-crate foam mattress, Plaintiff was unable to roll over on his side while lying on a slab metal bed which increased the likelihood that he would develop bedsores and/or autonomic dysreflexia.

32. Prior to his incarceration at the BCCF, Plaintiff was required to sleep on a motorized Tempur-Pedic mattress to assist him with his disability and to help prevent bedsores and autonomic dysreflexia.

33. On or about May 10th, 2024, Plaintiff was incarcerated in Bucks County Prison. Upon entering the confines of the BCCF, the Defendants had a "special relationship" with Plaintiff required that they provide him with proper and reasonable medical care to address his serious medical needs including, but not limited to, an extra mattress for his slab metal bed.

34. From the moment Plaintiff arrived at BCCF on May 10, 2024, and throughout his incarceration at the prison, he complained either directly, or through intermediaries in the chain-of-command, to all Defendants about his need for an egg-crate foam mattress for his metal-slabbed prison bed, as well as, an experienced and qualified wound care assistant.

35. Plaintiff repeatedly made these requests to both correctional offices and PrimeCare medical staff because if Defendants did not provide him with the proper mattress and a qualified wound care attendant, he would develop a severe bedsore that could get infected and cause him sepsis infections.

36. Immediately prior to his incarceration at the BCCF, Plaintiff had no bedsores whatsoever because he received proper medical care from trained providers and proper bed in his home to accommodate his medical condition.

37. While incarcerated at BCCF, Plaintiff was under the medical care of Defendants *had actual notice of Plaintiff's medical condition and needs and* who owed Plaintiff a duty of care due to his quadriplegic condition.

38. At all times herein, Defendants breached their duty of care to Plaintiff by failing to provide Plaintiff with the additional egg-crate mattress padding, as well as proper wound prevention and care, he requested of them.

39. While incarcerated at BCCF, Defendants forced Plaintiff to sleep on a slab metal bed with a paper-thin mattress which highly increased the likelihood that Plaintiff would develop severe bedsores. Plaintiff was unable to sleep on his side because it caused severe pressure on his hip(s) making him susceptible to autonomic dysreflexia, a potentially deadly condition. Plaintiff communicated his concerns about these specific conditions of confinement to all Defendants and prison staff including all of the individual PrimeCare and John/Jane Doe prison Defendants herein.

40. From the moment he entered BCCF, Plaintiff repeatedly requested from Defendant prison and medical staff that they provide him with an extra egg-crate foam mattress in order to prevent the possibility of developing a bedsore as well as an experienced and qualified care assistant to help roll

his body to offload pressure points. Defendants denied Plaintiff's reasonable requests. Defendants' denial of Plaintiff's requests ensured that Plaintiff would develop a bedsore.

41. On May 13, 2024, Plaintiff was examined by Defendant Briana Culp, PA-C, who noted in the Plaintiff's medical record that he "notify medical of any early signs of skin breakdown." Thus, Defendants had actual knowledge of Plaintiff's serious medical condition and needs due to his condition of quadriplegia.

42. Despite Plaintiff's repeated requests, the Defendants refused to provide Plaintiff with the egg-crate foam specialty mattress and proper wound prevention and qualified care specialist, which failure caused Plaintiff to suffer a large bedsore and develop sepsis.

43. Plaintiff requested that Defendant Culp make the necessary arrangements to provide him with an additional mattress or otherwise properly cushioned mattress designed to help prevent any bedsores from occurring. Defendant Culp either refused to fulfill this request to address Plaintiff's serious medical condition or, if requested, was denied by Defendants superior to her in the chain-of-command.

44. On May 23, 204, Defendant, Lee Ann Reynolds, LPN who did Plaintiff's initial intake at BCCF examined the Plaintiff and noted an open wound on his tail bone. No additional mattress was prescribed by Reynolds for the open wound to prevent it from turning into a decubitus ulcer.

45. On May 25, 204 Defendant Rueben Stolzfus documented stage 3 or 4 decubitus ulcer worsening and that the plaintiff laid in urine-soaked

dressings all night increasing maceration with pustules present. The chart noted that he wanted to start plaintiff on Bactrim bid and give him an extra mattress and blankets in order to properly position him.

46. On May 26, 2024, despite Plaintiff's repeated request and a sixteen (16) day delay, and after Plaintiff developed a large and necrotic bedsore with sepsis, Defendants finally provided Plaintiff with an egg-crate foam mattress.

47. Defendants then failed to provide Plaintiff with a qualified wound prevention and care specialist who was properly trained according to accepted medical standards to treat and care for severe bedsores Plaintiff sustained as a result of Defendants' failure to provide him with the egg-crate foam mattress he repeatedly requested in order to avoid this injury.

48. As a direct and proximate result of Defendants' refusal to provide Plaintiff with a proper mattress or extra mattress(es), Plaintiff developed a Stage 3-4 pressure decubitus ulcer (bedsore) on his sacrum that continued to worsen without a proper mattress for him to sleep on and proper follow-up care to the wound.

49. On May 27, 2024, Plaintiff was transported from the BCCF to Doylestown Hospital by Correctional Officers and/or Sheriffs employed by Bucks County and or its Sherrif's Office. The assigned correctional officer and/or sheriff Defendants put Plaintiff, unsecured by any seatbelt mechanism and in shackles and leg-irons, across the back seat of their vehicle. Plaintiff's handcuffed hands were further restricted by the Defendants officers when they secured the handcuffs to a waist chain.

This manner of transport occurred every time Plaintiff was taken to and return form the hospital and violates accepted standards of medical care for and transportation of quadriplegic, including Plaintiff, exposed Plaintiff to further physical injury and violates § 1983 of the Civil Rights Act, the Americans with Disabilities Act, and the Rehabilitation Act.

50. Plaintiff was admitted to Doylestown Hospital for a debridement procedure of the large bedsore developed as a direct and proximate result of Defendants' refusal to provide him with an egg-crate foam mattress. According to Doylestown Hospital records, upon physical examination Plaintiff presented with a large sacral decubitus ulcer on the distal aspect; redness around the wound with black edges; and very foul smelling.

51. Upon admission, Plaintiff was placed on a regimen of intravenous and oral antibiotics. He had a temperature of 101.2 F.

52. The debridement procedure was performed on May 27, 2024. Doylestown Hospital discharged Plaintiff from its care on June 3, 2024. In the hospital Discharge Summary under the section entitled "Wound Care Instructions", it was recommended that Plaintiff be provided with a "specialty mattress" to prevent further skin breakdown. It further recommended the following: *Clean with Dakins ¼ strength, cover with dry dressing (silicone foam or ABD). Change BID two times per day and PRN as needed for drainage or if loose. May add alginate for moderate to heavy drainage.*

53. According to the Doylestown Hospital Discharge Summary concerning Plaintiff's condition of fever and chills, the "Patient was found to be in *severe sepsis secondary to cellulitis of sacral wound and with bacteremia.*"

54. The BCCF assigned **an** inmate named "Gene" to be his "wound care attendant" even though this inmate has no proper medical and/or wound-care training. Gene would occasionally change Plaintiff's wound bandages and dressings. Assigning an untrained inmate to provide wound care to another inmate who suffered the large and invasive bedsore, like the one sustained by Plaintiff, was unreasonable and violated all necessary medical thresholds under federal and state laws setting forth standard of care due to imprisoned individuals.

**55.** On June 5, 2024, Defendant Vazquez noted a "Large sacral wound with peri wound surrounding erythema; large area of fibrous tissue; ... Quadriplegic, involuntary spasms. Poor trunk control."

56. In June of 2024, Plaintiff presented himself to Defendant Vasquez with symptoms indicating that he was suffering from sepsis again. Vasquez noted that Plaintiff complained of chills, nausea, sweats, body aches, restlessness, and other symptoms. Based on these symptoms and Plaintiff's recent bout of sepsis that was previously treated at Doylestown Hospital, as noted above, Defendant Vasquez recommended that Plaintiff be transferred back to the hospital for evaluation and treatment of his worsening condition.

57.    On June 12, 2024, Defendants Bucks County and/or PrimeCare had Plaintiff transported from BCCF to Doylestown Hospital, once again, to be examined and evaluated for additional medical treatment for his large bedsore. On this date, Plaintiff told Doylestown physicians that he had an open wound on his tail bone and that he was suffering from severe chills and a fever.

58.    On physical examination at the June 12, 2024, visit, Plaintiff exhibited redness of the sacral area with open wound. A fowl smelling drainage was noted. Eschar noted a thick, dry, black, necrotic tissue in the center of the wound. On admission, the bedsore was found to be at Stage IV. The hospital recommended and ordered that Plaintiff have a consultation with a wound surgeon concerning the large sacral bedsore. Plaintiff was again diagnosed with sepsis secondary to sacral wound infection status post-debridement. Plaintiff was admitted to the hospital and remained there until June 21, 2026.

59.    On June 17, 2024, Doylestown Hospital performed the first of two surgical excisional debridement of Plaintiff's bedsore wound using cautery in the operating room to allow for adequacy of excision and hemostasis, a physiological process that stops bleeding after blood vessel injury. Plaintiff was put under general anesthesia for this operative procedure.

60.    The Doylestown Hospital Operative Report noted the existence of additional necrotic tissue at the right and left periphery of the bedsore wound. Plaintiff was returned back to BCCF after this procedure.

61. On June 18, 2024, a second surgical debridement of Plaintiff's bedsore wound was required due to the severity of the wound.

62. On June 18, 2024, during the second surgical procedure on Plaintiff, the doctors also inserted a PICC-Line to receive antibiotics until he was discharged and upon return to BCCF.

63. On June 21, 2024, Plaintiff was discharged from the hospital and returned from Doylestown Hospital to BCCF with instructions that his wound dressings and the administration of intravenous antibiotics be increased from one-time per day to two-times per day.

64. On June 24, 2024, Plaintiff was examined by Defendant Victoria Gessner, M.D. at BCCR. Dr. Gessner assessed that Plaintiff was suffering from sepsis secondary to his sacral wound infection.

65. Plaintiff underwent no further hospitalizations or medical procedures until after his release from BCCF.

66. On or about August 10, 2024, Plaintiff completed his jail sentence and was released from BCCF. At the time of his release, Plaintiff had still not recovered from his injuries.

67. Had Defendants provided Plaintiff with the egg-crate foam padding for his thin prison-issued mattress upon his intake at BCCF, as well as proper wound prevention care, then his bedsore and septic injuries would not have occurred and all of the subsequent operative procedures and treatment would not have been necessary.

68. While incarcerated at BCCF, Plaintiff did not receive the proper medical care to which he was legally entitled, given his extremely limited physical

capacities as quadriplegic and his susceptibility to sustaining bedsores with the further risk of developing sepsis which could cause a serious medical illness and death. All that the Defendants had to do was provide Plaintiff with the proper egg-crate foam mattress padding as well as proper wound precaution care, that he requested from the moment he entered BCCF to begin his three (3) month sentence.

69. As a direct and proximate result of the above deliberate indifference, medical malpractice, wrongful acts, and omissions of Defendants, Decedent suffered emotional anxiety, physical pain and suffering.

70. Plaintiff posed no threat to the safety and/or orderly running of the BCCF if Defendants provided him with the egg-crate foam bed mattress he repeatedly requested from them.

71. Plaintiff was treated in a disparate manner compared to other disabled inmates and pregnant female inmates who were provided the same egg-crate mattresses in their third (3rd) trimester.

## COUNT I

### Plaintiff v. All Defendants

### 42 U.S.C. § 1983 – Denial of Medical Care

72. All of the preceding paragraphs are incorporated by reference as if fully set forth herein.

73. Defendants had a constitutional and/or statutory duty to provide Plaintiff with reasonable and necessary medical care given his physical condition on Intake.

74. Plaintiff is a quadriplegic who required specific medical care on a daily basis, i.e. an egg-crate foam mattress and a qualified wound care attendant to change his body position to offload pressure points and treat his bedsore wound.

75. Plaintiff repeatedly requested that Defendants provide him with an egg crate foam mattress pad, or additional mattresses, that would lay on top of the thin prison-issued mattress that laid upon the metal slab bed. Defendants ignored Plaintiff's request until the middle of June 2024, well after the bedsore in question formed.

76. Plaintiff's medical condition was serious as the development of the large and infected bedsore further led to Plaintiff developing episodes of sepsis from that infection. The sepsis infection caused Plaintiff to suffer fevers, chills, nausea, and other symptoms related thereto.

77. Defendants had the means to provide Plaintiff with the proper mattress(es) and/or mattress paddings ,as well as proper wound prevention and care, from a qualified professional but refused to accommodate Plaintiff. By ignoring Plaintiff's repeated requests, Defendants ignored Plaintiff's serious medical needs.

78. **The John/Jane Doe Correctional Officers and/or John/Jane Roe Sheriff Officer Defendants violated Plaintiff's 8th Amendment rights by transporting Plaintiff from the BCCF to Doylestown Hospital in the manner described above.**

79. Defendants' actions violated the 8th Amendment to the U.S. Constitution.

80. Defendants acted jointly and severally in repeatedly and deliberately denying Plaintiff proper and reasonable medical care under the circumstances. Such failure amounted to the deliberate indifference to Plaintiff serious medical needs.

81. The above-described actions of the aforementioned Defendants were so malicious, intentional, deliberate and reckless and displayed such a reckless indifference to, that the imposition of punitive damages is warranted.

82. As a direct and proximate result of Defendants' violation of Plaintiff's constitutional and civil rights, Plaintiff developed a serious and large bedsore, episodes of sepsis with high fevers, nausea, and chills that exposed him to possible death.

83. As a direct and proximate result of Defendant's violation of Plaintiff's constitutional and civil rights, Plaintiff suffered severe emotional distress, anxiety, loss of life's pleasure, sleeplessness, and depression.

**WHEREFORE,** Plaintiff demands compensatory and punitive damages against Defendants, jointly and severally, plus attorney fees pursuant to 42 U.S.C. § 1988, interest, costs and all other appropriate relief.

## COUNT II

**Plaintiff v. Defendants Bucks County, PrimeCare, Inc.,
Warden Carl Mettelus, PrimeCare, Inc. CEO Thomas Weber,
Dr. Victoria Rollings-Mazza, and Kevin Northfleet**

### 42 U.S.C. § 1983 – *Monell* Claim

84. All preceding paragraphs are incorporated by reference as if fully set forth herein.

85. PrimeCare Medical, Inc., a Pennsylvania-based for-profit correctional healthcare provider, has faced numerous federal lawsuits alleging systemic negligence, deliberate indifference, and failure to provide adequate care, resulting in substantial settlements. Key cases involve inmate deaths from withdrawal, suicide, and untreated sepsis, often stemming from poor staffing, unmonitored conditions, and a business model that incentivizes cost-cutting over patient care.

86. Defendants Buck County, PrimeCare Medical, Inc., Warden Mettelus, Weber, Dr. Rawlings-Mazza and/or Northfleet, have adopted and maintained for many years a recognized and accepted policy, custom, and/or practice of condoning and/or the acquiescence of the deliberate indifference to serious medical needs of inmates incarcerated at BCCF, including Plaintiff, and of subjecting them to the same type of treatment to which Plaintiff was subjected, which policy violates the Eight and Fourteenth Amendments of the Constitution of the United States.

87. The aforementioned unconstitutional policy, custom and/or practice includes failing to provide adequate training of medical providers and correctional officers regarding the need to examine, diagnosis and treat inmates with serious physical medical conditions and handicaps, including quadriplegia.

88. Defendants Bucks County, PrimeCare Medical, Inc., Warden Mettelus, Weber, Dr. Rawlings-Mazza, and/or Norfleet have knowingly adopted and maintained for many years recognized and accepted customs, policies,

and/or practices within Buck County Prison system, including BCCF, that increased the risk of injuries and infection due to lack of proper medical treatment to inmates such as Plaintiff that ultimately resulted in Plaintiff's above-described injuries, including but not limited to:

a. Failing to have and/or enforce appropriate medical procedures, policies, and training to prevent prison staff and medical providers from denying inmates appropriate egg-crate mattress(es) if for any reasons they are susceptible to developing bedsores on their body;

b. Failing to have and/or enforce appropriate procedures, policies, and training to provide adequate medical care regarding the medical needs of inmates/pre-trial detainees who are disabled due to spinal cord injuries.

c. Failing to have and/or enforce adequate testing, hiring, training, supervision, and discipline to ensure prison staff act to prevent and/or intervene in prison staff and medical providers denying adequate medical care to inmates/pre-trial detainees with spinal cord injuries, such as Plaintiff.

d. Failing to provide proper mattresses and/or egg crate foam mattress paddings and proper wound prevention and care to inmates/pretrial detainees with spinal cord injuries, such as Plaintiff, who are susceptible to developing bedsores and infections and who would in fact develop bedsores.

89.   Defendants Bucks County, PrimeCare Medical, Inc., Warden Mettelus, Weber, Dr. Rawlings-Mazza and/or Northfleet  have been aware of the aforementioned customs, policies, and/or practices for a substantial period of time and, despite said knowledge, were deliberately indifferent of the constitutional rights of inmates/pre-trial detainees with spinal cords injuries, such as Plaintiff, by failing to:

   a.   Take necessary steps to provide proper mattresses and/or egg-crate mattress paddings that are designed to protect people with spinal cord injuries and limited movement ability, such as those sustained by Plaintiff, to each inmate with such a condition who enters Bucks County Prisons including, but not limited to, BCCF;

   b.   Discipline or otherwise properly supervise the Defendant prison staff and/or medical providers who fail to provide the necessary mattress(es) and/or egg-crate mattress paddings to inmates with spinal cords injuries, such as those sustained by Plaintiff;

   c.   Sanction them instead of effectively training the defendant prison staff and/or medical providers with regard to the proper constitutional and statutory duties regarding medical care owed to inmates in their custody and care.

90.   Defendants Bucks County, PrimeCare Medical, Inc., Warden Mettelus, Weber, Dr. Rawlings-Mazza and/or Northfleet effectively condoned,

acquiesced to, participated in, and perpetrated the aforementioned customs, policies, and/or practices, in violation of Plaintiff's rights under the 8th Amendment, the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States, the laws of the United States and of the Commonwealth of Pennsylvania, and in violation of 42 U.S.C. § 1983, by failing to take action to provide medically appropriate mattresses, as well as proper wound prevention and care, to inmates with spinal cord injuries, such as those sustained by Plaintiff, in order to prevent the development of serious bedsores that can lead to sepsis and death.

91.    As the direct and proximate cause of Defendants Bucks County, PrimeCare Medical, Inc., Warden Mettelus, Weber, Dr. Rawlings-Mazza and/or Northfleet violated Plaintiff's rights under both the 8th Amendment and the Due Process Clause of the 14th Amendment.

92.    As a direct and proximate result of Defendants' violation of Plaintiff's constitutional and civil rights, Plaintiff developed a serious and large bedsore that required numerous debridement and surgical procedures, episodes of sepsis with high fevers, nausea, and chills that exposed him to possible death.

93.    As a direct and proximate result of Defendants' violation of Plaintiff's constitutional and civil rights, Plaintiff suffered severe emotional distress, anxiety, loss of life's pleasures, sleeplessness, and depression.

**WHEREFORE**, pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiff demands compensatory and punitive damages against Defendants Bucks County, PrimeCare

Medical, Inc., Warden Carl Mettelus, CEO Thomas Weber Dr. Rawlings-Mazza and Kevin Northfleet, jointly and/or severally, in an amount sufficient to fully and adequately compensate the Plaintiff, plus interest, costs, attorney's fees and all other appropriate relief.

## Count III

### 42 U.S.C. §§ 12131–12165 – Title II, Americans With Disabilities Act
### Plaintiff v. Defendants Bucks County and PrimeCare Medical, Inc.,

94.    All preceding paragraphs are incorporated by reference as if fully set forth herein.

95.    Defendants failed to accommodate the Plaintiff's quadriplegic disability

96.    As a result, Plaintiff was denied access to medical services he required due to his disability.

97.    The actions of Defendants Bucks County and PrimeCare, as set forth above and incorporated herein, violated Plaintiff's rights under Title II of the American with Disabilities Act, 42 U.S.C. §§ 12131–12165.

98.    As a direct and proximate result of Defendants' violation of Plaintiff's constitutional and civil rights, Plaintiff developed a serious and large bedsore, episodes of sepsis with high fevers, nausea, and chills that exposed him to possible death.

99.    As a direct and proximate result of Defendant's violation of Plaintiff's constitutional and civil rights, Plaintiff suffered severe emotional distress, anxiety, loss of life's pleasures, sleeplessness, and depression.

**WHEREFORE**, Plaintiff demands compensatory and punitive damages against Defendants Bucks County and PrimeCare Medical, Inc, jointly and/or

severally, in an amount sufficient to fully and adequately compensate the Plaintiff, plus interest, costs, attorney's fees and all other appropriate relief.

## Count IV

### Section 504, Rehabilitation Act of 1973 – 29 U.S.C. § 794

### Plaintiff v. Defendants Bucks County and PrimeCare Medical, Inc.,

100. All preceding paragraphs are incorporated by reference as if fully set forth herein.

101. Defendants failed to accommodate Plaintiff's quadriplegic disability.

102. As a result, Plaintiff was denied access to medical services he required due to his disability.

103. The actions of Defendants Bucks County and PrimeCare, as set forth above and incorporated herein, violated Plaintiff's rights under Section 504 of The Rehabilitation Act of 1973, 29 U.S.C. § 794.

104. As a direct and proximate result of Defendants' violation of Plaintiff's constitutional and civil rights, Plaintiff developed a serious and large bedsore, episodes of sepsis with high fevers, nausea, and chills that exposed him to possible death.

105. As a direct and proximate result of Defendant's violation of Plaintiff's constitutional and civil rights, Plaintiff suffered severe emotional distress, anxiety, loss of life's pleasures, sleeplessness, and depression.

**WHEREFORE**, Plaintiff demands compensatory and punitive damages against Defendants Bucks County and PrimeCare Medical, Inc, jointly and/or severally, in an amount sufficient to fully and adequately compensate the Plaintiff, plus interest, costs, attorney's fees and all other appropriate relief.

## Count V

## Negligence/Vicarious Liability

### Plaintiff v. PrimeCare and Individual Defendant Medical Providers Victoria Gessner, M.D., Briana Culp, P.A.-C, Megan Hughes, P.A.-C, Lee Ann Reynolds. LPN, Javier Vazquez, NP, Jessica Thomas, RN DON, Katie Harvey, CRNP, Reuben Stoltzfus, RN, John Oliver, RN, Casey Donohue, RN

106. All of the preceding paragraphs are incorporated by reference as if more fully set forth herein.

107. Defendants Victoria Gessner, M.D., Briana Culp, P.A.-C, Megan Hughes, P.A.-C, Lee Ann Reynolds, LPN, Javier Vazquez, NP, Jessica Thomas, RN DON, Katie Harvey, CRNP, Reuben Stoltzfus, RN, John Oliver, RN, Casey Donohue, RN had a duty to render reasonable, proper, adequate and appropriate medical care to Plaintiff and to protect him from harm by providing him with the proper egg-crate mattress(es), as well as proper wound care and prevention.

108. Defendants were negligent and careless, and breached their duty of care the Plaintiff and said negligence and carelessness was a substantial factor causing Plaintiff's severe injuries.

109. Defendant PrimeCare Medical, Inc. is liable for the negligent conduct of the aforementioned Defendants pursuant to the principles of agency, ostensible agency, vicarious liability and/or respondeat superior.

**WHEREFORE**, Plaintiff, demands compensatory damages against Defendants Victoria Gessner, M.D., Briana Culp, P.A.-C, Megan Hughes, P.A.-C, Lee Ann Reynolds, LPN, Javier Vazquez, NP, Jessica Thomas, RN DON, Katie

Harvey, CRNP, Reuben Stoltzfus, RN, John Oliver, RN, Casey Donohue, RN, jointly and/or severally, in an amount sufficient to fully and adequately compensate Plaintiff, plus interest, costs, attorney's fees, and all other appropriate relief.

## Count VI

## Corporate Negligence/Gross Negligence

## <u>Plaintiff v. PrimeCare Medical, Inc.</u>

110. All of the preceding paragraphs are incorporated by reference as if more fully set forth herein.

111. The direct corporate negligence, gross negligence and carelessness of Defendant PrimeCare Medical, Inc. include, but is not limited to:

  a. Failure to properly train its employees, agents, and ostensible agents regarding the need to ensure that inmates/pretrial detainees, especially quadriplegics who are susceptible to severe bedsores, be diagnosed and treated according to the accepted standards of medical care in the community;

  b. Failure to formulate, adopt, and/or enforce adequate rules, policies and/or procedures to ensure that inmates with severe health issues receive needed services such as providing Plaintiff with the appropriate egg-crate mattresses, as well as proper wound prevention and care, to quadriplegic inmates under its care.

112.  Defendant PrimeCare, had actual and/or constructive knowledge of the above acts and omissions which caused harm, increased the risk of harm, and were substantial factors in causing Plaintiff's injuries.

113.  The direct corporate and/or gross negligence and carelessness of Defendant PrimeCare, set forth herein, caused harm, increased the harm, and was a substantial factor in causing Plaintiff's injuries.

114.  The above-described actions of the Defendant were so malicious, intentional and reckless and displayed such a reckless indifference to the Plaintiff's rights and well-being that the imposition of punitive damages is warranted.

**WHEREFORE**, Plaintiff demands compensatory and punitive damages against Defendant, PrimeCare Medical, Inc. for an amount sufficient to fully and adequately compensate Plaintiff and deter Defendants and those similarly situated, plus interest, costs, attorney's fees, and all other appropriate relief.

Respectfully submitted,

/s/ *Alan Denenberg*

ALAN DENENBERG, ESQUIRE
Pennsylvania ID No. 54161
ABRAMSON & DENENBERG, P.C.
1315 Walnut Street | Suite 500
Philadelphia, PA 19107
(215) 546-1345

Date: May 8, 2026